UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PARAMOUNT PICTURES CORPORATION,
a Delaware Corporation,

                                            **Plaintiff,**

                                                  v.                                        5:07-CV-593
                                                                               (FJS/GJD)

**WAYNE HOPKINS,**

                                            **Defendant.**
_____

**ATTORNEYS**                                         **OF COUNSEL**

**HISCOCK & BARCLAY LLP**          **RICHARD K. HUGHES, ESQ.**
One Park Place                            **JOHN D. COOK, ESQ.**
300 South State Street
Syracuse, New York 13202
Attorneys for Plaintiff

**WAYNE HOPKINS**                         **NO APPEARANCE**
Defendant *pro se*

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff, one of the world's leading creators and distributors of motion pictures, retained MediaSentry to combat infringement of its copyrighted motion pictures on peer-to-peer ("P2P") networks. *See* Declaration of Karen R. Thorland dated October 19, 2007 ("Thorland Decl."), at ¶ 3. MediaSentry is a company that provides online antipiracy and copyright protection services to identify direct infringers of Plaintiff's copyrights on P2P networks. *See id.*

      MediaSentry searched several P2P networks for infringing copies of Plaintiff's

copyrighted motion pictures. *See* Declaration of Elizabeth Hardwick dated October 25, 2007, at ¶ 4. When MediaSentry located a user offering Plaintiff's copyrighted works for download, it sought to download those files while obtaining information to confirm the infringement and to identify the infringer. *See id.* at ¶ 5.

Defendant used a fictitious network name or pseudonym to copy and distribute Plaintiff's copyrighted works. *See* Thorland Decl. at ¶ 5. Therefore, Plaintiff initially could only identify Defendant by the unique Internet Protocol ("IP") address that his internet service provider ("ISP"), Time Warner Cable, had assigned to him on the date and at the time of the infringement. *See id.* Based upon this information, Plaintiff filed a "John Doe" lawsuit against Defendant and others in the Southern District of New York, where Time Warner Cable is located. *See id.*

ISPs keep track of the IP addresses that they assign to their subscribers in "user logs." *See id.* at ¶ 6. These user logs provide the most accurate means to connect an infringer's identity to its infringing activity. *See id.* In its "John Doe" lawsuit, Plaintiff moved for leave to serve a subpoena on Time Warner Cable seeking Defendant's true identity. *See id.* The court granted the motion and, on December 27, 2005, Plaintiff served the subpoena. *See id.* In response, Time Warner Cable identified Defendant as the individual using the IP address that MediaSentry had obtained at the time of the infringement. *See id.* at ¶ 7.

According to the information that Time Warner Cable provided, Defendant did not reside in the Southern District of New York. *See id.* at ¶ 8. Therefore, Plaintiff dismissed that suit against Defendant without prejudice and sought to negotiate an out-of-court settlement with him. *See id.* Defendant refused to settle the dispute. *See id.*

On June 6, 2007, Plaintiff filed the complaint in this action to prevent Defendant from

copying and distributing to others over the Internet unauthorized copies of one of Plaintiff's copyrighted motion pictures and for damages in connection with Defendant's past infringements of this motion picture. *See* Plaintiff's Memorandum of Law at 1. Plaintiff served Defendant with a copy of the summons and complaint on July 24, 2007. *See id.*; Thorland Decl. at ¶ 10. Defendant did not answer or otherwise appear within the statutory period, *see* Thorland Decl. at ¶ 11; and, therefore, on August 16, 2007, Plaintiff sent him a letter advising him that he was in default and that, if he failed to answer, Plaintiff would seek a default judgment against him, *see id.* Defendant did not respond to Plaintiff's letter. *See id.* Defendant did, however, send a letter to the Court dated August 21, 2007. *See* Dkt. No. 9. The Court responded to that letter by informing him that the "letter was not in proper form to be considered an 'answer'" and directing him to "review the complaint [and] forward [any further responses] to the court no later than September 7, 2007." *See* Dkt. No. 10. Defendant did not file any additional documents.

On October 4, 2007, Plaintiff requested and the Clerk of the Court entered a Notice of Default against Defendant. *See* Dkt. Nos. 11-12. Currently before the Court is Plaintiff's motion for entry of a default judgment against Defendant pursuant to Rule 55 of the Federal Rules of Civil Procedure. *See* Dkt. No. 15.

## II. DISCUSSION

**A.     Default judgment standard**

Rule 55 of the Federal Rules of Civil Procedure provides a two-step procedure for entry of a default judgment. First, "[u]nder Rule 55(a), a clerk must . . . enter the default against a party who fails to plead or otherwise defend." *Time Warner Entm't/Advance Newhouse P'ship v.*

*Stockton*, No. 5:00-CV-1989, 2004 WL 1739520, *1 (N.D.N.Y. Aug. 3, 2004) (citing Fed. R. Civ. P. 55(a)). Second, the plaintiff must "move the court for default judgment." *Id.* (citation omitted). "In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim." *Id.* (citation omitted). Since, at Plaintiff's request, the Clerk of the Court entered default against Defendant, Plaintiff's motion for entry of a default judgment is appropriately before the Court.

In support of its motion, Plaintiff asserts that its complaint sets forth the following facts that establish Defendant's liability for willful copyright infringement: (1) Plaintiff owns the applicable exclusive distribution rights to the copyrighted motion picture, *Four Brothers*; (2) this motion picture is the subject of a valid Certificate of Copyright Registration that the Register of Copyrights issued; (3) Defendant infringed Plaintiff's exclusive rights by distributing to others, without authorization, copies of this copyrighted motion picture by using a P2P network on the Internet; and (4) Defendant's infringement was willful because he either was aware or had reason to be aware that his actions constituted an infringement of Plaintiff's rights. *See* Plaintiff's Memorandum of Law at 2 (citing Complaint). Based upon these facts, Plaintiff requests statutory damages in the amount of $6,000, a permanent injunction enjoining Defendant from infringing Plaintiff's copyrights, both those currently existing and those later granted, and attorney's fees and costs in the amount of $2,778.44. *See id.*

**B.     Statutory damages**

Section 504(c) of Title 17 of the United States Code provides, in pertinent part, that

> the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages or profits, an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1).

Moreover, where a defendant commits an infringement willfully, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000" per infringement. *See* 17 U.S.C. § 504(c)(2). In this context, "[w]illfulness . . . means that the defendant 'recklessly disregarded' the possibility that 'its conduct represented infringement.'" *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 112 (2d Cir. 2001) (quotation and other citation omitted).

"[S]tatutory damages are not meant to be merely compensatory or restitutionary. . . . The statutory award is also meant 'to discourage wrongful conduct.' . . ." *Id.* at 113-14 (internal citation and quotation omitted). Moreover, the amount of statutory damages that the court awards should "further the Copyright Act's dual objectives of compensating copyright owners for past infringement and deterring future infringement." *Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 403 (S.D.N.Y. 2002) (default judgment awarding $30,000 statutory damages for a single infringement). Thus, factors that a court should consider in determining the amount of the award "include the 'expenses saved and profits reaped by the infringers,' the revenues lost by the plaintiff, the infringers' state of mind (wilful, knowing or merely innocent), the value of the copyright and the deterrent effect on both the defendant and others." *Id.* (quotation omitted). Finally, "'[e]ven for uninjurious and unprofitable invasions of copyright the court may, if it deems just, impose a liability within statutory limits to sanction and vindicate the statutory policy

[of discouraging wrongful conduct].'" *Id.* (quotation omitted).

Plaintiff asserts, among other things, that, because it "has established that Defendant downloaded and distributed, with willful disregard for and indifference to Plaintiff's rights, at least one of Plaintiff's copyrighted motion pictures," it could request statutory damages up to $150,000. *See* Plaintiff's Memorandum of Law at 3. However, Plaintiff seeks to recover only $6,000 in statutory damages because it believes that this amount is reasonable and justified under the circumstances of this case and the costs that it incurred in seeking to protect its exclusive rights under copyright law. *See id.* at 3-4 (citation omitted).

In light of Plaintiff's assertion that it expended $3,000 to $5,000 to develop the information and evidence necessary to bring this suit, *See* Declaration of Lauren Nguyen dated October 23, 2007, at ¶ 11, together with Defendant's refusal to enter into settlement negotiations or to answer the complaint or otherwise appear, even after Plaintiff warned him that he would be in default if he did not do so, Plaintiff's request for $6,000 in statutory damages is reasonable. Accordingly, the Court awards Plaintiff the full amount of statutory damages that it seeks.

### C. Permanent injunction

"As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) (citations omitted). Moreover, Section 502 of the Copyright Act provides, in pertinent part, that any court may "grant . . . final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Finally, as one court noted, "[t]he weight of authority supports the extension of

injunctive relief to future works." *Princeton Univ. Press v. Michigan Document Servs.*, 99 F.3d 1381, 1392 (6th Cir. 1996) (citations omitted); *see also Ortho-O-Vision, Inc. v. Home Box Office, Inc.*, 474 F. Supp. 672, 686 (S.D.N.Y. 1979) (holding that, "[w]here . . . liability has been determined adversely to the infringer, there has been a history of continuing infringement and a significant threat of future infringement remains, it would be inequitable to grant the copyright owner partial summary judgment on the issue of liability without enjoining the infringement of future works").

Since, by reason of his default, Defendant has admitted that he willfully infringed Plaintiff's copyright and there is nothing in the record to suggest that Defendant would not continue to violate Plaintiff's copyrights, the Court grants Plaintiff's request for a permanent injunction that encompasses both its present and its future copyrighted motion pictures.

**D.     Attorney's fees and costs**

Section 505 of the Copyright Act provides that a court may, in its discretion, award full costs to a prevailing party in a civil copyright action, including attorney's fees. *See* 17 U.S.C. § 505. Although "[a]n award of attorney's fees under Section 505 is discretionary, . . . any award must be consistent with the purposes of the Copyright Act: compensation and deterrence." *Getaped.com, Inc.*, 188 F. Supp. 2d at 406 (citation omitted). The court should base its "decision to award fees . . . on factors such as 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* (quotation and other citation omitted).

In this Circuit when a party seeks an award of attorney's fees, it must support its request with contemporaneous time records that show "'for each attorney, the date, the hours expended, and the nature of the work done.'" *Whitten v. Cross Garage Corp.*, No. 00 Civ. 5333, *6 (S.D.N.Y. July 9, 2003) (quotation omitted).  Then, the court determines reasonable attorney's fees by using the lodestar method, which involves multiplying the number of hours that the plaintiff's attorney spends on the matter by a reasonable hourly rate.  *See id.* (citation omitted).

The Second Circuit has "suggest[ed] that the district court consider, in setting the reasonable hourly rate it uses to calculate the 'lodestar,' what a reasonable, paying client would be willing to pay . . . ." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 112 (2d Cir. 2007).  Moreover, the district court should

> bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. . . . In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors;[1] it should also bear in mind that a reasonable, paying client

---

[1] In *Arbor Hill Concerned Citizens Neighborhood Ass'n*, the Second Circuit set out the twelve *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

(continued...)

>wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

*Id.* at 117-18.

Recently, this Court determined, based upon these factors, that the reasonable hourly rates in this District, i.e., what a reasonable, paying client would be willing to pay, were $210 per hour for an experienced attorney, $150 per hour for an attorney with four or more years experience, $120 per hour for an attorney with less than four years experience, and $80 per hour for paralegals. *See New Paltz Cent. Sch. Dist. v. St. Pierre*, No. 1:02-CV-981, 2007 WL 655603, *2 (N.D.N.Y. Feb. 26, 2007).

Given Defendant's willful infringement of Plaintiff's copyright, the Court concludes that an award of attorney's fees and costs would serve the Copyright Act's dual purposes of compensation and deterrence. Accordingly, the Court grants Plaintiff's request for an award of attorney's fees and costs calculated as follows.

Although Plaintiff submitted contemporaneous time records, it did not submit any information about the qualifications and experience of the attorneys and paralegals who expended time in prosecuting this matter. The Court, however, was able to find the necessary information for all but two of the individuals who are associated with Loeb & Loeb LLP on its website. Three of these individuals, "TB Cummins," "L Chen," and "J A Barton," are

---

[1](...continued)
*Arbor Hill Concerned Citizens Neighborhood Ass'n*, 493 F.3d at 114 n.3.

paralegals.[2]  With regard to the attorneys associated with Hiscock & Barclay LLP, the Court consulted www.martindale.com to determine that John D. Cook is an attorney who was admitted to the New York Bar in 2002 and that Richard K. Hughes is an attorney who was admitted to the New York Bar in 1973.  Therefore, the Court will calculate the attorney's fees using the following rates:

| Name | Hours Worked | Hourly Rate | Total |
|---|---|---|---|
| TB Cummins | .2 | $80 | $   16.00 |
| L Chen | .2 | $80 | $   16.00 |
| J A Barton | 10.2 | $80 | $  816.00 |
| John Cook | 3.2 | $150 | $  480.00 |
| Richard Hughes | .8 | $210 | $  168.00 |
| **Total** | | | **$1,496.00** |

Plaintiff also incurred costs in the amount of **$561.72** for copying, postage, messenger service, and computer research as well as the fees associated with service of process and filing the action in this Court.

### III. CONCLUSION

After carefully reviewing Plaintiff's submissions, the relevant parts of the record, and the

---

[2] On the contemporaneous time records that Plaintiff submitted for the work of the Loeb & Loeb individuals, there are entries for persons named "S S Park" and "E Doisy."  Neither of these individuals is listed on Loeb & Loeb LLP's website.  Since it is Plaintiff's responsibility to establish the qualifications and experience of its attorneys, the Court will not award attorney's fees for the work of the individuals it could not identify.

applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Plaintiff's motion for entry of a default judgment against Defendant is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's request for statutory damages in the amount of **$6,000** is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's request for an award of attorney's fees and costs is **GRANTED** in the amount of **$2,057.72**; and the Court further

**ORDERS** that Plaintiff's request for a permanent injunction is **GRANTED** according to the following terms:

> Defendant shall be and hereby is enjoined from directly or indirectly infringing Plaintiff's rights under federal or state law in the following copyrighted motion picture:
>
> *Four Brothers*; and
>
> any other motion picture, whether now in existence or later created, that is owned or controlled by Plaintiff (or any parent, subsidiary, or affiliate of Plaintiff) (Plaintiff's Motion Pictures"), including without limitation by using the Internet or any online media distribution system to reproduce (i.e., download) any of Plaintiff's Motion Pictures, or to make any of Plaintiff's Motion Pictures available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff. Defendant also shall destroy all copies of Plaintiff's Motion Pictures that Defendant has downloaded onto any computer hard drive or server without Plaintiff's authorization and shall destroy all copies of

those downloaded recordings transferred onto any physical medium or device in Defendant's possession, custody or control.

**IT IS SO ORDERED.**

Dated: February 4, 2008
       Syracuse, New York

                                                Frederick J. Scullin, Jr.
                                                Senior United States District Court Judge